**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| GENEVA PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 19 CV 5829 |
| | ) | |
| The CITY OF CHICAGO, Illinois, a municipal | ) | Judge |
| Corporation, and former Chicago Police | ) | |
| Sergeant JAMES SAJDAK #1058, | ) | Magistrate |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, GENEVA PERRY, by her attorneys, HAMILTON LAW OFFICE, LLC, makes

the following complaint against Defendants CITY OF CHICAGO, Illinois ("Defendant CITY"),

and Chicago Police Sergeant JAMES SAJDAK #1058:

**JURISDICTION AND VENUE**

1.  This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law

    of Plaintiff's rights as secured by the United States Constitution.

2.  This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331, 1343, and 1367.

3.  Venue is proper under 28 U.S.C. §1391(b). The events giving rise to the claims asserted in this

    complaint occurred within this district.

**PARTIES**

4.  Plaintiff GENEVA PERRY is a 25-year old African-American female and a resident of Chicago,

    Illinois.

5.  At all relevant times, Defendant SAJDAK was a Chicago Police Officer employed by Defendant

    CITY, acting under color of law and within the scope of his employment.

6.  Defendant SAJDAK is a white male who is approximately 61 years old.

7. Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times was the employer and principal of Defendant SAJDAK. Should Plaintiff prevail on her claims, Defendant CITY must indemnify Defendant SAJDAK pursuant to 735 ILCS 10/9-102.

8. Under the doctrine of *respondeat superior,* Defendant CITY is liable as principal for Defendant SAJDAK's conduct, which occurred within the scope of his employment as a Chicago police officer.

## FACTS

### Defendant SAJDAK's history of misconduct.

9. Defendant SAJDAK has a long history of complaints of misconduct registered against him with the City of Chicago. These complaints are known as complaint registers or CRs.

10. As of September 2016, Defendant SAJDAK had at least 43 CRs against him.

11. On information and belief, the CRs against Defendant SAJDAK were investigated by various entities under the control of the City of Chicago: The Office of Professional Standards ("OPS"), the Independent Police Review Authority ("IPRA"), the Civilian Office of Police Accountability ("COPA"), the Bureau of Internal Affairs ("BIA"), and the Internal Affairs Department ("IAD").

12. Defendant CITY knew or should have known of Defendant SAJDAK's pattern of misconduct.

13. In 1997, Defendant CITY sustained a complaint of criminal misconduct against Defendant SAJDAK in connection with the sale and/or possession of illegal drugs.

14. Defendant SAJDAK was only suspended for 30 days as a result of this sustained CR and remained a Chicago police officer.

15. The 30-day suspension was a lenient punishment even in Defendant CITY's broken police disciplinary system.

16. Between 1997 and 2012, SAJDAK amassed 34 more citizen misconduct complaints.

17. Despite this, in 2012, Defendant CITY promoted Defendant SAJDAK to the rank of sergeant.

18. In 2013, Defendant SAJDAK was named as a defendant in a civil rights lawsuit entitled *Hondras v. City of Chicago, et al.*, 13 CV 1846.

19. The *Hondras* lawsuit arose out of an incident on July 14, 2011, in which a young woman named Tiffany Hondras was taken to the 11th District police station after being pulled over in a car driven by her boyfriend.

20. At the police station, Defendant SAJDAK grabbed Hondras, handcuffed her, and took her into a secure area. To punish Hondras's boyfriend for challenging him and the other officers, Defendant SAJDAK ordered that Hondras be stripped searched and that a body cavity search be conducted.

21. Hondras was subjected to a full strip search in the bathroom of the police station; she was told to pull down her pants and underwear, to squat and cough multiple times, and to pull apart her buttocks and genitalia.

22. Nothing illegal was ever found on Hondras's person and she was released without charges.

23. In September 2015, the City of Chicago settled the *Hondras* lawsuit for $220,000.

24. Defendant SAJDAK was not re-trained or disciplined as a result of the *Hondras* lawsuit or the incident that gave rise to it.

25. On information and belief, Defendant SAJDAK has also physically and/or sexually abused and/or harassed other individuals.

26. Prior to September 2016, Defendant CITY knew or should have known that Defendant SAJDAK had demonstrated an obvious pattern of misconduct.

**Defendant SAJDAK harasses Plaintiff.**

27. In September of 2016 Defendant SAJDAK began stalking and harassing Plaintiff. This stalking

and harassment has occurred on multiple occasions when Defendant SAJDAK was on duty,

wearing his police uniform, and driving a Chicago Police Department vehicle.

28. On or about September 8, 2016, Defendant SAJDAK pulled Plaintiff's vehicle over at or near

the intersection of St. Louis and Roosevelt in Chicago, Illinois.

29. Defendant SAJDAK pulled up next to Plaintiff's vehicle and ordered her to follow him, and

Plaintiff complied.

30. Defendant SAJDAK pulled into an abandoned parking lot at or near the intersection of Homan

and Roosevelt.

31. Defendant SAJDAK was wearing a police uniform on September 8, 2016.

32. During this traffic stop, Plaintiff produced her state identification to Defendant SAJDAK but

was unable to produce a driver's license.

33. Defendant SAJDAK then masturbated in front of Plaintiff between their two parked cars,

forcing her to watch.

34. When he was finished, Defendant SAJDAK then released Plaintiff without issuing her any

tickets and without charging her with any crimes.

35. After this incident, on multiple occasions between September 2016 and September 19, 2018

Defendant SAJDAK, while driving his police vehicle, followed Plaintiff while she was driving

her vehicle.

36. Defendant SAJDAK had no legal justification or legitimate police purpose for following Plaintiff

on any of these occasions.

37. After Plaintiff caught Defendant SAJDAK following her multiple times, she began to confront

him, asking him why he was following her and demanding that he stop.

38. On some occasions, Plaintiff was able to video record her interactions with Defendant SAJDAK.

39. On at least one occasion, Plaintiff's sister was in the car with her when Defendant SAJDAK followed Plaintiff.

40. It was not until after several of these incidents that Plaintiff realized Defendant SAJDAK was engaged in a pattern of harassment that violated her Constitutional rights.

41. On July 3, 2019, Plaintiff saw Defendant SAJDAK in a vehicle outside her aunt's home in Chicago, Illinois.

42. Plaintiff flagged down an on-duty Chicago police officer and reported Defendant SAJDAK's misconduct to a Chicago police detective.

43. Defendant SAJDAK has never issued Plaintiff any traffic tickets or charged her with any crimes.

**COUNT I**
(42 U.S.C. §1983 – Fourth Amendment Claim)

44. Each of the foregoing paragraphs is incorporated as if fully restated here.

45. In the manner described above, Defendant SAJDAK made shows of authority through the use of his marked police vehicle and police uniform and his status as a Chicago Police Sergeant.

46. In the manner described above, Defendant SAJDAK's shows of authority communicated to Plaintiff that she was not at liberty to ignore his presence and go about her business.

47. In the manner described above, Plaintiff submitted to Defendant SAJDAK's authority by stopping her vehicle, interacting with Defendant SAJDAK.

48. The misconduct described in this Court was objectively unreasonable and was undertaken intentionally or with reckless indifference to Plaintiff's constitutional rights.

49. As a result of Defendant's misconduct described in this Count, Plaintiff suffered emotional damages.

**WHEREFORE,** Plaintiff prays for a judgment against Defendant SAJDAK in a fair and just amount sufficient to compensate her for her damages, plus punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT II
(42 U.S.C. §1983 – Equal Protection Claim)

50. Each of the foregoing paragraphs is incorporated as if fully restated here.

51. In the manner described above, Defendant SAJDAK intentionally treated Plaintiff differently from others similarly situated and there was no rational basis for the difference in treatment.

52. This disparate treatment was undertaken with an improper personal motive and was not rationally related to a legitimate governmental purpose.

53. In the manner described above, Defendant SAJDAK also intentionally discriminated against Plaintiff on the basis of her gender.

54. As a result of Defendant's misconduct described in this Count, Plaintiff suffered emotional damages.

**WHEREFORE,** Plaintiff prays for a judgment against Defendant SAJDAK in a fair and just amount sufficient to compensate her for her damages, plus punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT III
(42 U.S.C. §1983 – Due Process Claim)

55. Each of the foregoing paragraphs is incorporated as if fully restated here.

56. In the manner described above, Defendant SAJDAK directly, substantially, and intentionally violated Plaintiff's right to bodily integrity by sexually harassing her.

57. The misconduct described in this Count was not undertaken in the service of a legitimate government objective and it shocks the conscience.

6

58. The misconduct described in this Court was undertaken intentionally or with reckless indifference to Plaintiff's constitutional rights.

59. As a result of Defendant's misconduct described in this Count, Plaintiff suffered emotional damages.

**WHEREFORE,** Plaintiff prays for a judgment against Defendant SAJDAK in a fair and just amount sufficient to compensate her for her damages, plus punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

### COUNT IV
### (Policy Claim – Defendant CITY)

60. Each of the preceding paragraphs is incorporated as if fully restated here.

61. The misconduct of Defendant SAJDAK was undertaken pursuant to the policy and practice of the Defendant CITY of Chicago.

62. As a matter of both policy and practice, Defendant CITY has encouraged the type of police misconduct at issue in this case by failing to adequately train, investigate and/or discipline Chicago police officers, and these failure constitute deliberate indifference.

63. The following of Defendant CITY's policies and persistent widespread customs and practices were the driving force behind Defendant SAJDAK's misconduct and caused harm to PLAINTIFF:

    A. The CITY of Chicago has encouraged its police department and investigative agencies to protect its police officers from accountability by allowing and fostering a "code of silence" in the Chicago police department.

    B. The CITY has failed to adequately and impartially investigate allegations of police misconduct.

    C. The CITY has failed to adequately retrain and discipline officers for their misconduct.

    D. The CITY has failed to develop and implement an effective "early warning system" to

identify and address problematic behavior by its police officers.

E. Finally, the CITY has failed to terminate officers who have demonstrated they are dangerous and pose a foreseeable risk to public safety.

64. Individually and collectively, these policies, practices or customs of the Defendant CITY proximately resulted in the culture and endemic attitude among members of the CPD, including Defendant SAJDAK, that they may engage in misconduct against citizens of Chicago with impunity, and without fear of official consequence; they consider themselves "above the law."

65. These policies, practices or customs of the Defendant CITY, individually and collectively, have been maintained and/or implemented with deliberate indifference by Defendant CITY, encouraging and allowing Defendant SAJDAK to commit the wrongful acts against Plaintiff, and therefore acted as the direct and proximate cause of the injuries sustained by Plaintiff.

66. These policies, practices or customs of Defendant CITY, individually and/or collectively, were the moving force behind Defendant SAJDAK's conduct, depriving Plaintiff of her rights under the United States Constitution.

**WHEREFORE**, Plaintiff prays for judgment against Defendant CITY for compensatory damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

## COUNT V
(Intentional Infliction of Emotional Distress)

67. Each of the foregoing paragraphs is incorporated as if fully restated here.

68. As more fully alleged in the preceding counts, Defendant wantonly and willfully caused Plaintiff to suffer severe emotional distress.

69. Defendant SAJDAK's conduct toward Plaintiff was extreme and outrageous.

70. Defendant SADJDAK knew or should have known that his acts would cause Plaintiff to suffer severe emotional distress.

71. As a direct and proximate result of Defendant SAJDAK's acts, Plaintiff suffered the severe emotional distress and suffering prior to his death.

    **WHEREFORE**, Plaintiff prays for judgment against Defendant CITY in and amount reasonable to compensate her for her emotional pain and suffering, and such other relief as is just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

GENEVA PERRY, Plaintiff,

By: /s Torreya L. Hamilton
    Attorney for Plaintiff

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, Illinois 60604
312.726.3173
tlh@thehamiltonlawoffice.com
Attorney No. 6229397